**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

MARY SEALS                                                                            PLAINTIFF

v.                                        No. 3:07CV00066 JLH

AMERICAN GREETINGS CORPORATION                                DEFENDANT


ANGELA HARRIS                                                                    PLAINTIFF

v.                                        No. 3:07CV00071 JLH

AMERICAN GREETINGS CORPORATION                                DEFENDANT


<u>**OPINION AND ORDER**</u>

      Angela Harris and Mary Seals filed separate actions against American Greetings Corporation,

alleging that they were terminated because they are African-Americans. Harris and Seals claim that

American Greetings violated their rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq.* American Greetings filed separate motions for summary judgment correlating to the

cases of Harris and Seals, respectively. Harris and Seals filed a joint response, and American

Greetings filed a joint reply. Because the claims of Harris and Seals arise out of the same set of facts

and occurrences, and because the arguments for and against summary judgment are essentially the

same with respect to both Harris and Seals, their actions have been consolidated and the Court will

address American Greetings' separate motions for summary judgment in the same opinion and order.

For the following reasons, American Greetings' motions for summary judgment are denied.

**I.**

      A court should enter summary judgment when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553.  If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)).  A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences.  *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases).  *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## II.

Harris and Seals, both African-Americans, were employed as production specialists at American Greetings' facility in Osceola, Arkansas, working on an A-70 machine.  Angela Chapman, a Caucasian, also worked at the Osceola facility, but she was assigned to an HVIF machine, which was located in a different area of the facility.  On July 22, 2006, an altercation ensued between

Harris, Seals, and Chapman over the use of a fan.  Chapman walked into the A-70 machine area to take a fan that was labeled as belonging to the HVIF area.  Harris and Seals told Chapman that she was not allowed to take the fan, and all three employees began arguing over the fan.  Scott McCullar, a Caucasian supervisor, intervened and allowed Chapman to return to her area with the HVIF fan.

After McCullar left the working area, Harris and Seals then proceeded to go into the HVIF work area and take one of its fans.  Chapman, who had returned to the HVIF area, confronted Seals and told her that she was not allowed to take the fan.  Seals and Chapman entered into a heated verbal altercation over the fan.  Harris, believing that the altercation might continue to escalate, stepped in between Seals and Chapman.  Several employee witnesses stated that Harris then pushed Chapman, but Harris denies having made any physical contact with Chapman other than what was necessary to separate her from Seals in order to prevent further escalation.

After the incident was reported to Frank Richardson, a Caucasian and the human resources manager, Richardson investigated starting on July 24, 2006.  He interviewed several employee witnesses, both African-American and Caucasian, who stated that Harris crossed her arms and pushed Chapman with her arms crossed.  Richardson also spoke with Chapman, Harris, and Seals individually regarding the incident.  After completing his investigation, Richardson determined that Harris had pushed Chapman with her arms crossed, and on July 26, 2006, he informed Harris that she was being terminated for violating American Greetings' Rules of Conduct and Discipline.  Two days later, Richardson disciplined Seals and Chapman with a Final Warning, ordered them to complete an anger management program, and instructed them that their employment would be terminated if either received another warning within twelve months.

On August 8, 2006, both Harris and Seals contacted an American Greetings alert line and

3

reported that they had been unfairly treated and discriminated against because of their race.  Len Sennish, a Caucasian, was the labor relations manager and in charge of responding to discrimination complaints made through the alert line.  Because Sennish was concerned that Harris and Seals might have valid complaints, and because he received conflicting information regarding what transpired between Harris, Seals, and Chapman, Sennish recommended holding a re-enactment meeting, in which he would attempt to recreate the original incident with Harris, Seals, Chapman, and the employee witnesses to the event.  Sennish stated that the re-enactment would either confirm Richardson's conclusions and disciplinary decisions or necessitate a modification of Richardson's determinations.

Sennish traveled to Osceola to conduct the re-enactment on October 12, 2006.  In advance of the re-enactment, Sennish informed Seals, Harris, and Chapman that any dishonesty in their portrayal of the events in the re-enactment would result in further disciplinary measures.  The other employee witnesses to the original incident were also told that any dishonesty on their part would merit discipline.  The re-enactment took place during working hours, and Sennish attempted to replicate all facets of the incident by having each employee witness observe the re-enactment from the same or a similar location as that from which they witnessed the original incident.  During the course of the re-enactment, Harris and Seals both maintained that Harris did not shove Chapman, and Chapman maintained that Harris pushed her.  Some employee witnesses provided general feedback to Sennish during the re-enactment.  At the end of the re-enactment, Sennish concluded that Harris had, in fact, pushed Chapman during the original altercation and that Seals was being dishonest regarding her recollection of the events.  As a result, Seals, who was already on a final warning status, was immediately terminated.

## III.

Where there is no direct evidence of discrimination, the Court uses the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  A plaintiff must first establish a prima facie case by showing that: (1) she belongs to a protected class; (2) she was qualified and meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently, or the circumstances surrounding the adverse employment action give rise to an inference of unlawful discrimination.  *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008) (citing *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007)); *Arnold v. Nursing and Rehab. Ctr. at Good Shepherd, LLC*, 471 F.3d 843, 846 (8th Cir. 2006).  If the plaintiff establishes a prima facie case, the defendant can rebut a presumption of discrimination by articulating a nondiscriminatory reason for the adverse employment action. *Arnold*, 471 F.3d at 846.  If the employer articulates a nondiscriminatory reason, then the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for discrimination.  *Id.*

### A.      Prima Facie Case

American Greetings disputes that Harris and Seals have established the second and fourth elements of their prima facie case.  American Greetings argues that neither Harris nor Seals were meeting legitimate job expectations because they were both involved in an altercation in which their conduct did not conform to American Greetings' employment handbook policies for employee behavior.  However, American Greetings has provided no proof that Harris and Seals were not meeting legitimate job expectations prior to the incident with Chapman, and their treatment in response to that altercation is what has given rise to the present litigation.  Harris and Seals had no

disciplinary action warranting termination or a final notification prior to the incident.  Therefore, at the time that the incident giving rise to this litigation occurred, Harris and Seals were meeting their employer's legitimate job expectations.

American Greetings also disputes that Harris and Seals have shown that similarly situated employees outside their protected class were treated differently.  The Supreme Court has recognized that the prima facie case necessarily varies based on the factual circumstances.  *McDonnell Douglas*, 411 U.S. at 802 n.13, 93 S. Ct. at 1824; *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1022 (8th Cir. 1998).  The necessary level of proof is not inflexible and varies with the specific facts of each case.  *Warner-Jenkinson Co., Inc.*, 152 F.3d at 1022 (quoting *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990–91 (8th Cir. 1998)).  To satisfy the usual fourth element of a prima facie case—that the plaintiff was treated differently than other similarly-situated comparators—a plaintiff may also demonstrate that the facts surrounding her termination permit an inference of discrimination. *Zhuang v. Datacard Corp.*, 414 F.3d 849, 854 (8th Cir. 2005).

In this case, Harris and Seals were similarly situated with Chapman insofar as all three were involved in an altercation that allegedly included profanity and some physical contact.  American Greetings' employment policies state that "verbal abuse or physical violence are grounds for immediate discharge."  American Greetings's own employment policies do not differentiate between verbal abuse and physical violence with respect to the correlating punishment for employees. American Greetings has not shown why Harris, who denies having pushed Chapman, was treated more harshly than Seals and Chapman, who allegedly engaged in verbal abuse, when both actions are punishable by the same penalty under American Greetings' employment policies.

Regarding the re-enactment, Sennish believed Chapman's version of the events over Harris's

and Seals's version, and Seals was then terminated for being dishonest.   Although American Greetings asserts that the employee witnesses clearly validated Chapman's version of the events, Sennish's deposition testimony regarding the reactions of employee witnesses is not so clear. Sennish stated that the employees would sometimes shake their heads to indicate their agreement or disagreement with portions of the re-enactment.   In response to being asked whether some employee witnesses indicated that Harris did not shove Chapman, Sennish said:

> And as you know, and as I observed, there was, you know, some incidental people, the witnesses looking at one other, well, did she do this or did she turn that way or say this or say that.  But the general meaningful elements, you know, that there—I think there were maybe one or two people, well, I couldn't really tell.  But then there were other people that says, oh, no, she put her arms out in front of her and she pushed Ms. Chapman.

Sennish said that "literally every witness disputed almost every point [Seals] made."  Sennish then concluded that Seals was being dishonest, stating: "You know, some people did say, well, I'm pretty sure, you know.  But in general, no, I was very comfortable observing the witnesses in their behaviors, their nonverbal movements, as well as what they said that there was dishonesty and that a shove did indeed occur."   Asked again whether any witnesses agreed with Harris and Seals, Sennish stated: "Yeah, I think I said earlier I seem to recall that there was a witness, perhaps one, maybe two, I am not sure at this point, that from their angle they couldn't really tell."   Sennish admitted that he could not remember any names of the employee witnesses, and apparently no written record was made of the re-enactment identifying the names of witnesses who spoke and what was said or the names of witnesses who by their behaviors and nonverbal movements led Sennish to disbelieve Harris and Seals.  Therefore, although Sennish came to the conclusion that Seals was being dishonest and that Harris had pushed Chapman, it does not appear to the Court that the re-

enactment conclusively established that Harris pushed Chapman, as asserted by American Greetings. A fact issue remains as to whether Harris actually pushed Chapman and as to whether or to what degree Seals was being dishonest during the course of the re-enactment.

Furthermore, the re-enactment was only conducted after American Greetings had already decided that Harris had shoved Chapman. The re-enactment was not done as an initial investigatory tool to determine what transpired between Harris, Seals, and Chapman. Rather, the re-enactment only occurred after a determination of fault had already been made. Therefore, even if Chapman is not a comparator for purposes of the fourth element of a prima facie case, the circumstances surrounding Harris's and Seals's terminations give rise to an inference of discrimination such that a prima facie case has been established.

### B.      Pretext

For the same reasons that gave rise to a prima facie case, the circumstances surrounding Harris's and Seals's respective adverse employment actions create an issue of fact as to whether American Greetings' articulated reason is a mere pretext for racial discrimination. Harris was terminated for conduct that was punishable by the same penalty as the conduct in which Chapman engaged, yet Chapman received only a final warning. After American Greetings' human resources manager had already determined that Harris pushed Chapman and that Harris's and Seals's version of the incident was inaccurate, Sennish conducted a re-enactment of the incident. Although Sennish claims that the reactions of employee witnesses led him to conclude that Chapman had in fact been pushed, Sennish apparently relied mostly on the witnesses' body language, could not remember and did not record any of the witnesses' names, and could not remember how many witnesses agreed with Harris's and Seals's version of the incident. The employees who took part in the re-enactment

knew that American Greetings had already reached an initial conclusion that Harris had pushed Chapman.  Thus, the re-enactment, although perhaps well-intentioned, was not a totally unbiased investigatory method because in essence it was conducted with the end result already having been determined.

At its core, this case revolves around a fact issue as to whether and to what degree Harris initiated physical contact with Chapman.  That this issue remains a question of fact is evidenced by Sennish's effort to hold a re-enactment to confirm what occurred.  American Greetings correctly notes that the proper inquiry is not whether the employer's determination was factually correct, but whether the employer honestly believed that the employee engaged in prohibited conduct.  *Johnson v. AT&T Corp.*, 422 F.3d 756, 762–63 (8th Cir. 2005).  However, simply because an employer states that it honestly believed that the employee engaged in prohibited conduct does not mean that the plaintiff's case fails.  There may still be an issue of fact regarding the employer's articulated reason where the circumstances permit a reasonable inference that the real reason for the adverse employment action was because of the employee's race.  *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–47, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *Spencer v. Stuart Hall Co.*, 173 F.3d 1124, 1128 (8th Cir. 1999)).  Here, there was a disparity between the punishments for Harris and Chapman, although their offenses were punishable by the same penalty under the employment handbook.  In addition, Seals was discharged after Sennish believed she had been dishonest during a re-enactment that took place after American Greetings had already reached a conclusion regarding the original incident.  The reasons for both the punishment disparity and the re-enactment may have been well-intended, but the circumstances surrounding the adverse employment actions in this case create a triable issue of fact as to the real reason for Harris's and

Seals's respective employment terminations.

## CONCLUSION

For the foregoing reasons, American Greetings' motions for summary judgment are DENIED

(Case No. 3:07-CV-00071, Docket #38; Case No. 3:07-CV-00066, Docket #45).

IT IS SO ORDERED this 4th day of March, 2009.

_____

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE