**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

MARY SEALS                                                                                                    PLAINTIFF

v.                                      No. 3:07CV00066 JLH

AMERICAN GREETINGS CORPORATION                                                        DEFENDANT
* * * * * * * * * * * * * * * * * * * * * * * * *
ANGELA HARRIS                                                                                              PLAINTIFF

v.                                      No. 3:07CV00071 JLH

AMERICAN GREETINGS CORPORATION                                                        DEFENDANT

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Angela Harris and Mary Seals commenced separate actions against American Greetings Corporation, alleging that their employment was terminated because they are African Americans, in violation of their rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Because Harris and Seals' claims arise from the same set of facts and occurrences and involve common questions of law, their actions have been consolidated. Following a one-day bench trial, the cases are now ripe for a decision.

**I.**

Harris and Seals were employed as production specialists at American Greetings' facility in Osceola, Arkansas, working on an A-70 machine. Angela Chapman, a Caucasian, also worked at the Osceola facility, but she was assigned to an HVIF machine, which was located in a different area of the facility. On Saturday, July 22, 2006, an altercation occurred between Harris, Seals, and Chapman over the use of a fan. Chapman walked into the A-70 machine area to take a fan that was labeled as belonging to the HVIF area. Harris and Seals told Chapman that she was not allowed to take the fan, and the three employees began arguing over the fan. Scott McCullar, a Caucasian

supervisor, intervened and allowed Chapman to return to her area with the HVIF fan. McCullar then left the area to find another fan to use at the A-70 machine.

After McCullar left the working area, Seals went to the HVIF work area and was looking at one of the fans located in the area. Chapman, who had returned to the HVIF area, confronted Seals and told her that she was not allowed to take the fan. Seals and Chapman entered into a heated verbal exchange. Harris also came to the HVIF area and stepped between Seals and Chapman, extending her hands to keep them apart. Chapman says that Harris then put both hands on her chest and pushed her. Three other employees stated that Harris folded her arms across her chest and pushed Chapman. Those employees also stated that Seals was verbally abusive toward Chapman. Harris denies pushing Chapman and denies having made any physical contact with Chapman other than what was necessary to keep her and Seals apart. Chapman cursed Harris. According to Chapman, she cursed Harris after the push, but there was some evidence presented at trial that the curse occurred earlier. Harris and Seals reported the incident to management.

Frank Richardson, a Caucasian and the human resources manager, investigated the incident beginning on Monday, July 24, 2006. He asked the employee witnesses to provide written statements describing what had occurred. Although some employees reported that Harris stepped in between Seals and Chapman to separate them, others stated that Harris crossed her arms in front of her chest and pushed Chapman backward. Richardson also spoke with Chapman, Harris, and Seals individually regarding the incident. After completing his investigation, Richardson concluded that Harris had pushed Chapman, and on July 26, 2006, he informed Harris that she was being terminated for violating American Greetings' Rules of Conduct and Discipline. Two days later,

Richardson disciplined Seals and Chapman with a Final Warning,[1] ordered them to complete an anger management program, and instructed them that their employment would be terminated if either received another warning within twelve months.

On August 8, 2006, both Harris and Seals contacted an American Greetings alert line and reported that they had been treated unfairly following the altercation with Chapman. Len Sennish, a Caucasian, was the labor relations manager and in charge of responding to discrimination complaints made through the alert line. Because Sennish was concerned that Harris and Seals might have valid complaints, and because he received conflicting information regarding what transpired between Harris, Seals, and Chapman, Sennish recommended holding a re-enactment meeting, in which he would attempt to recreate the original incident with Harris, Seals, Chapman, and the employee witnesses to the event.

Sennish traveled to Osceola to conduct the re-enactment on October 12, 2006. In advance of the re-enactment, Sennish and Richardson informed Seals and Chapman that any dishonesty in their portrayal of the events in the re-enactment would result in further disciplinary measures. The other employee witnesses to the original incident were also told that any dishonesty on their part would merit discipline. The re-enactment took place during working hours with both Richardson and Steve Brothers, the plant manager, observing. During the re-enactment, Sennish attempted to replicate all facets of the incident by having each employee witness stand in the same or a similar location as that from which they witnessed the original incident. During the course of the re-enactment, Harris and Seals both maintained that Harris did not shove Chapman, and Chapman

---

[1] American Greetings has a progressive discipline system, albeit one that gives management the discretion to impose harsher levels of discipline without first imposing discipline that is less harsh. Obviously, termination is the harshest level of discipline. A Final Warning places an employee on notice that another violation will result in termination.

maintained that Harris pushed her. Other employee witnesses described the incident as they had done in July. At the end of the re-enactment, Sennish concluded that Harris had, in fact, pushed Chapman during the original altercation and that Seals was being dishonest regarding her recollection of the events. Richardson also believed that Seals' version of what transpired and the location of each employee at the time of the altercation was drastically different from that of the other employees. As a result, Seals, who had already received a Final Warning, was immediately terminated for violating the prohibition on dishonesty in American Greetings' employee handbook.

## II.

Both Harris and Seals allege that they were subject to disparate treatment because of their race. In analyzing an employment discrimination claim based on race, the Court uses the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). First, each plaintiff must establish a prima facie case of race discrimination. *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998). When a prima facie case is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1021 (8th Cir. 1998). If the defendant is able to articulate a legitimate, nondiscriminatory reason, then the plaintiff must show that the proffered reason is a pretext for intentional discrimination. *Rose-Maston v. NME Hosp., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998).

A plaintiff generally establishes a prima facie case of discrimination by demonstrating that (1) she is a member of a protected class; (2) she was qualified to perform her job or was meeting her employer's legitimate job expectations; (3) she was terminated; and (4) she was treated differently than other similarly-situated persons outside of her protected class or the circumstances surrounding

the adverse employment action give rise to an inference of unlawful discrimination. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008) (citing *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007)); *Arnold v. Nursing and Rehab. Ctr. at Good Shepherd, LLC*, 471 F.3d 843, 846 (8th Cir. 2006). The Supreme Court has recognized that the prima facie case necessarily varies based on the factual circumstances. *McDonnell Douglas Corp.*, 411 U.S. at 802 n.13, 93 S. Ct. at 1824; *Warner-Jenkinson Co.*, 152 F.3d at 1022. The necessary level of proof is not inflexible and varies with the specific facts of each case. *Warner-Jenkinson Co.*, 152 F.3d at 1022 (quoting *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990-91 (8th Cir. 1998)).

Both Harris and Seals have established a prima facie case of employment discrimination. They were African-American employees for American Greetings and, until the incident with Chapman, were meeting their employer's legitimate job expectations. As a result of the incident, both Harris and Seals lost their jobs, whereas Chapman, a Caucasian employee, did not. Although Harris and Chapman were involved in the same physical altercation, only Harris was terminated after Richardson's investigation. Chapman received a Final Warning.[2] Then, at the re-enactment months later, both Seals and Chapman gave statements that were consistent with what they had said immediately following the incident: Seals alleged that Harris had not pushed Chapman, and Chapman alleged that Harris had pushed her. Following the re-enactment, Seals was terminated; Chapman was not. These facts are sufficient to establish a prima facie case of discrimination against American Greetings.

After the plaintiffs establish a prima facie case, the burden of production shifts back to American Greetings to articulate legitimate, nondiscriminatory reasons for terminating Harris and

---

[2] Chapman was terminated a few months later as a result of a quality control issue. Her termination, like that of Seals, occurred because of the Final Warning issued in July.

Seals.  "To accomplish this, a defendant must clearly set forth, through the introduction of admissible evidence, the reasons for [its actions].  The explanation provided must be legally sufficient to justify a judgment for the defendant." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981).

American Greetings articulated legitimate, nondiscriminatory reasons for terminating Harris and Seals.  American Greetings terminated Harris because Richardson determined that Harris pushed Chapman and such behavior constituted a violation of American Greetings' Rules of Conduct and Discipline.  Although Chapman and Seals also were involved in the altercation, Richardson reasoned that pushing a coworker was a more egregious violation of American Greetings' workplace violence policy than yelling in a threatening manner or using profanity.  American Greetings also terminated Seals' employment because Richardson believed that Seals lied about a number of factual details during the re-enactment even after she was instructed to tell the truth.  Richardson testified at trial that Seals' account of the altercation was wholly inconsistent with what the other employees said, including Harris.  Not only did Seals continue to allege that Harris did not push Chapman, but Seals also disagreed with the other employees about where the parties were standing when the altercation occurred and what transpired between Harris, Seals, and Chapman.  Dishonesty violates American Greetings' Rules of Conduct and constitutes a legitimate, nondiscriminatory reason for terminating employment.

Because American Greetings has provided legitimate, nondiscriminatory reasons for its actions, the burden shifts back to Harris and Seals to show that the stated reasons are mere pretext for race discrimination.  *Arnold*, 471 F.3d at 846.  To establish pretext, a plaintiff must "demonstrate that a discriminatory animus lies behind the [defendant's] neutral explanations. . . . [E]ven if an

6

employer fires an employee based upon a mistaken belief, the employee still must offer some evidence that racial animus was at the root of the termination." *Id.* at 847 (internal citations omitted). Likewise, even if an employee is treated unfairly, such treatment does not necessarily give rise to a Title VII cause of action. *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 812 (8th Cir. 2005).

The evidence presented at trial suggests that Harris and Seals may have been treated unfairly. Although some of the written statements that Richardson collected from the eye witnesses corroborate Chapman's allegation that Harris shoved her, others do not. Chris Williams reported that Harris stepped between Seals and Chapman and held them back to keep them from fighting, just as Harris had alleged. Cross-examination at trial produced conflicts in the testimony of the witnesses who said that Harris pushed Chapman and exposed doubt as to the credibility of those witnesses. On the day of the incident, Harris and Seals, not Chapman, decided that the incident should be reported, which suggests that they did not believe that they had violated company policy. Chapman's statement that Harris pushed her was made in response to the complaints by Harris and Seals that Chapman had acted abusively. The re-enactment, which occurred months later, added nothing to Richardson's initial investigation. Employee witnesses were told that they could be terminated for dishonesty and then were asked whether Harris pushed Chapman, all the while knowing that Richardson, who was in the room during the re-enactment, had determined already that Harris pushed Chapman. It is no surprise, then, that the results of the re-enactment corroborated Richardson's earlier conclusion.

Nevertheless, even if Richardson was mistaken when he determined that Harris shoved Chapman and that Seals was being dishonest about the incident, these facts alone would not establish

pretext. Richardson did not fabricate the statements by employees who said that Harris pushed Chapman and that Seals was verbally abusive, nor when he reached his conclusions did he have the benefit of cross-examination by an attorney representing Harris and Seals. The plaintiffs offered no evidence to suggest that Richardson has a history of discriminating against African Americans or that anyone else in management has such a history. At no time during the trial did they suggest that Richardson has made other hiring or firing decisions on the basis of race or that he treats African American employees differently than Caucasian employees. Richardson has been the Human Resources Manager for the American Greetings plant in Osceola since 1985. Forty-five percent of the employees are African Americans. In the past, Richardson has terminated both African American and Caucasian employees for being involved in physical altercations in the workplace and for dishonesty. This Court cannot find, based on all of the evidence, that racial animus was at the root of Richardson's decisions to terminate Harris and Seals.

## CONCLUSION

Although the evidence at trial indicates that Harris and Seals may have been treated unfairly, neither plaintiff proved that American Greetings discriminated against them or subjected them to disparate treatment based on their race. As a result, a judgment in favor of American Greetings will be entered separately.

IT IS SO ORDERED this 24th day of September, 2009.

*J. Leon Holmes*
———————————————
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE